UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KRISTIE D. COLLINS,                 )
                                       )
             Plaintiff,           )
                                       )
        v.                    ) Case No.: 1:14-cv-00466-DML-JMS
                                       )
CAROLYN W. COLVIN, Acting    )
Commissioner of the Social Security,  )
Administration,                 )
                                       )
            Defendant.      )

## Decision on Judicial Review

Plaintiff Kristie D. Collins applied in July 2011 for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging she has been disabled since June 2010.  Acting for the Commissioner of the Social Security Administration following a hearing on September 25, 2012, administrative law judge Joseph L. Brinkley issued a decision on October 25, 2012, that Ms. Collins is not disabled. The Appeals Council denied review of the ALJ's decision on February 7, 2014, rendering the ALJ's decision for the Commissioner final.  Ms. Collins timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Collins contends the Commissioner's decision should be reversed and remanded for three reasons.  She argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because it (1) reflects a flawed credibility analysis and (2) erroneously fails to include her need for a cane

when walking.  She also asserts the ALJ did not ensure that the vocational expert understood the scope of her work limitations, which led to an erroneous decision that work exists in the economy consistent with Ms. Collins's functional ability.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Ms. Collins's specific assertions of error.

### <u>Standard for Proving Disability</u>

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Ms. Collins is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can

perform, given her age, education, work experience, and functional capacity.  20

C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is

deferential.  A court must affirm if no error of law occurred and if the findings are

supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th

Cir. 2001).  Substantial evidence means evidence that a reasonable person would

accept as adequate to support a conclusion.  *Id.*  The standard demands more than a

scintilla of evidentiary support, but does not demand a preponderance of the

evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for

his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,*

357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence

in his decision, but he cannot ignore a line of evidence that undermines the

conclusions he made, and he must trace the path of his reasoning and connect the

evidence to his findings and conclusions.  *Arnett v. Astrue,* 676 F.3d 586, 592 (7th

Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

### Analysis

### I.    The ALJ's Sequential Findings

Ms. Collins was born in January 1971, was 39 years old as of her alleged

onset date, and was 41 years old at the time of the ALJ's decision.  Ms. Collins had

worked for many years as an administrative assistant in a doctor's office, and her

alleged onset date coincides with the date she stopped working there in June 2010. Ms. Collins worked less than a month at a women's fashion retail store in the Spring 2011, but the ALJ found that that short-term work was not substantial gainful activity for purposes of step one.  At step two, the ALJ identified the following as severe impairments:  meralgia paresthetica (a condition in which burning pain is felt in one's outer thigh because of the compression of a nerve receptor in that area of the body),[1] fibromyalgia, rheumatoid arthritis, obesity, depression, and anxiety.  At step three, he found no listing was met or medically equaled.  Ms. Collins does not contest the step one through three findings.

For purposes of steps four and five, the ALJ decided Ms. Collins has the residual functional capacity (RFC) to perform a modified range of sedentary work, with a sit-stand option that permits sitting in two-hour intervals and standing and walking in one-hour intervals, along with regularly scheduled breaks.  He limited the postural actions of stooping, squatting, crouching, and climbing ramps and stairs to only occasionally and he precluded the climbing of ladders, ropes, or scaffolds.  He limited the work environment to one without concentrated exposure to extreme hot and cold temperatures, vibrations, wetness, and humidity, and one without hazards such as uneven terrain, unprotected heights, and dangerous machinery.  The ALJ also determined Ms. Collins could not perform a job requiring binocular vision or requiring the wearing of tight-fitting clothing that would hug the

---

[1]     *See* http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/basics/definition/con-20030852.

skin.  He also limited her to work that is unskilled, simple, and routine, and requires only one-to-two-step tasks.

With this RFC, Ms. Collins was found not capable of performing her past work as a medical administrative assistant.  However, based on the testimony of a vocational expert, the ALJ decided the following jobs fit Ms. Collins's vocational profile and RFC, and are available in significant numbers in Indiana and the nation:  bonder (DOT #726.685-066), inspector (DOT #726.684-050), and assembler (DOT #726.684-010).  Accordingly, the ALJ concluded at step five that Ms. Collins is not disabled.

## II.    Ms. Collins's Assertions of Error

Ms. Collins makes three challenges to the ALJ's decision.  First, she contends the ALJ's credibility determination is patently erroneous.  Second, she contends the ALJ erroneously failed to include in the RFC her need for a cane when walking.  Third, she contends the ALJ did not ensure that the vocational expert understood the full scope of her work limitations, which resulted in an erroneous conclusion that work exists consistent with Ms. Collins's functional ability.  The court will address each of these issues in turn below.

## III.   The ALJ's Credibility Determination

Social Security Ruling 96-7p prescribes the appropriate process for evaluating credibility and requires an ALJ to consider a claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other pertinent evidence.  That evidence includes the claimant's daily activities, the

severity and intensity of the claimant's symptoms, precipitating and aggravating factors, medication, treatment, and other measures to relieve the person's symptoms and their efficacy and side-effects, and any other factors relevant to functional limitations from pain or other symptoms. *See also* 20 C.F.R. 404.1529(c)(3).

Because the ALJ sees and hears the claimant, his assessment of the claimant's credibility is entitled to special deference from the court. *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). The court's role is "limited to examining whether the ALJ's determination was 'reasoned and supported,'" and it may not overturn the ALJ's finding unless it is "patently wrong." *Elder v. Astrue,* 29 F.3d 408, 413-414 (7th Cir. 2008). "It is only when the ALJ's determination lacks any explanation or support that [the court] will declare it to be patently wrong and deserving of reversal." *Id.* (internal citations omitted).

Ms. Collins attacks the ALJ's negative credibility determination on three grounds. First, she contends the ALJ was required to address each of the factors described in SSR 96-7p as relevant to assessing credibility. Second, she contends the credibility analysis lacks a logical foundation as a whole. Third, she contends the ALJ erroneously relied on her failure to undergo certain treatment.

The first ground has no traction. It is *not* necessary that the ALJ recite findings on every factor listed in SSR 96-7p, or that he discuss every piece of evidence that might bear on credibility, or even that he specify exactly which of the claimant's statements he finds not credible. *Sawyer v. Colvin,* 512 Fed. Appx. 603

7

at *5 (7th Cir. 2013) (unpublished) (the principle that ALJs are not required to discuss every piece of evidence applies to a credibility assessment); *Jens v. Barnhart,* 347 F.3d 209, 213 (7th Cir. 2003) (ALJ need not specify which statements were incredible so long as the overall record adequately supports the credibility finding); *Erwin v. Astrue,* 2009 WL 2762840 at *7 (S.D. Ind. Aug. 27, 2009) (ALJ need not recite findings on each factor).

The court must also reject Ms. Collins's second argument that the ALJ's credibility assessment lacks logical explanation. As Ms. Collins notes, the ALJ included within his credibility discussion the oft-repeated boilerplate suggesting he first formulated an RFC and then rejected as not credible any statements inconsistent with it. That error is harmless so long as the ALJ otherwise provides rational support for his credibility determination. *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012). Here, the ALJ's decision provides sufficient insight into the bases for his negative credibility determination, and they are rational bases for negatively assessing Ms. Collins's credibility.

He noted that Ms. Collins claimed her pain and other fibromyalgia and arthritis symptoms make her unable to button clothing or tie shoes, yet the doctor who conducted a physical consultative examination noted that she attended to her footwear without any difficulty and she had normal grip strength and buttoned her clothing. (R. 20). The same doctor noted that Ms. Collins had not used an assistive device at her examination, yet she claimed at the hearing she needs to use a cane when walking. (R. 25). The ALJ also found that although Ms. Collins testified she

must elevate her feet above waist level for a majority of a day, there was no record in any medical reports from her regular office visits with any doctor of an instruction to do so.[2]

The ALJ also found that Ms. Collins had provided widely varying information about the extent of her work at the women's clothing store. She testified at the hearing she had worked only 20 hours per week for about three weeks, but she had told the psychologist who conducted a mental status examination that she had worked about 30 hours per week for four weeks.  (R. 20).  The ALJ also noted that Ms. Collins's pain diary (a diary she kept to document her daily activities, stresses, and pain symptoms) revealed she participated in numerous activities in a manner inconsistent with her descriptions at the hearing.  For example, she testified to very limited daily activities and claimed she normally drove a car only one day a week on Fridays when she took her husband to work so she could have the car to drive to the bank to deposit his paycheck.  Yet her pain diary documented many more regular instances in which she drove her husband to work and picked him up from work.

---

[2]      The ALJ acknowledged that Dr. Green-Mack, a physiatrist Ms. Collins began seeing in May 2011, filled out a "Fibromyalgia Medical Assessment Form" in which she checked a box that Ms. Collins should elevate her legs at waist level 50% of a workday.  He discounted the worth of that opinion because there was nothing in any of the records of Ms. Collins's visits with Dr. Green-Mack expressing any such instruction or anything remotely close to such an instruction.  Moreover, as the ALJ noted, most of Ms. Collins's visits with Dr. Green-Mack were medication follow-up appointments, barely mentioned any physical examination, and reflected mostly Ms. Collins's subjective descriptions of symptoms.  (R. 23 and R. 24).  Ms. Collins does not suggest in her briefs to the court that the ALJ should have credited the notion she must elevate her legs at waist level.

The diary also mentioned many social activities, including having date nights out with her husband and going shopping with friends. (R. 27).

Against the wide range of commentary provided by the ALJ to support his credibility finding, Ms. Collins contends that his comment that she failed to undergo certain treatment when the ALJ had not inquired whether she had a legitimate reason (such a financial one) to forgo the treatment scuttles the entire credibility evaluation. It is true that an ALJ should not discount credibility based on a claimant's failure to undergo recommended treatment unless he explores the reasons the claimant did not follow through on the recommendation. *E.g., Moss v. Astrue,* 555 F.3d 556, 562 (7th Cir. 2009). But the merit of this attack on the ALJ's credibility finding is not enough to find the credibility determination patently wrong. As the Commissioner points out, the Seventh Circuit has reminded courts not to harshly nitpick an ALJ's decision and has found that isolated errors in a credibility analysis do not require remand when the ALJ has otherwise built a logical bridge with substantial evidence of inconsistencies to support his negative credibility finding. *See McKinzey v. Astrue,* 641 F.3d 884, 890-91 (7th Cir. 2011). The court agrees with the Commissioner that in this case, the ALJ's reliance on Ms. Collins's failure to seek some recommended treatment, while erroneous since he did not explore the reasons for the failure, does not so undermine the credibility finding to make it patently wrong.

In summary and for all of the above reasons, the court finds no error in the ALJ's negative credibility determination sufficient to require remand.

**IV.**   <u>**The Absence of a Cane in the RFC**</u>

Ms. Collins faults the ALJ's failure to include in the RFC her need for a cane
when ambulating.  The ALJ stated in his decision that Ms. Collins claimed she
needed a cane to walk and her physiatrist had filled out a form stating she needed a
cane to walk, "but the medical evidence is devoid of a prescription for an assistive
device." (R. 24).   The ALJ acknowledged that Dr. Green-Mack's May 2011
"Fibromyalgia Medical Assessment Form" checked the "yes" box to a question
whether Ms. Collins must use a cane or other assistive device for balance while
engaging in occasional standing/walking, but he found the opinion was not
otherwise supported by the medical records. There was no prescription for a cane,
no mention of a cane in the records of Ms. Collins's treatment (with Dr. Green-Mack
or any other physician), and Ms. Collins had not even used a cane at her
consultative physical examination by the state agency physician.

Social Security Regulation 96-9p notes that to find in an RFC that a hand-
held assistive device is required, "there must be medical documentation
establishing the need for a hand-held assistive device to aid in walking or standing,
and describing the circumstances for which it is needed (*i.e.,* whether all the time,
periodically, or only in certain situations; distance and terrain; and any other
relevant information)."  The ALJ's determination that Dr. Green-Mack's "yes" to the
need for a cane in the check-the-box Assessment Form did not qualify as the
necessary medical documentation given the absence of any mention of a cane in any
of her medical records or in the records of any other physician is a rational

evaluation of the evidence.  Moreover, as the Commissioner points out, the ALJ gave numerous other legitimate reasons for discounting the opinions expressed by Dr. Green-Mack in the Assessment Form.  The inconsistencies the ALJ found between Dr. Green-Mack's Assessment Form and the medical evidence strengthen his decision that Dr. Green-Mack's Form did not "establish" a medical need for a cane or sufficiently document the circumstances under which one would be medically required.

Ms. Collins argues that the ALJ's insistence on evidence of the medical necessity of a cane through a prescription cannot be squared with the Seventh Circuit's opinion in *Parker v. Astrue,* 597 F.3d 920 (7th Cir. 2010).[3]  The discussion in *Parker* about the use of a cane concerns an ALJ's credibility determination, and it is inapplicable to the issue of whether a cane must be included as part of an RFC. The *Parker* court determined that it was "absurd" for the ALJ to discount the credibility of a claimant's statements about the extent of her pain and her use of a cane solely because she did not have a prescription for one.  *Id.* at 922.  Judge Posner explained:  "Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane.  A cane does not require a prescription; it had been suggested to the plaintiff by an

---

[3]     In her reply brief, Ms. Collins also cites to *Thomas v. Colvin,* 534 Fed. Appx. 546 (7th Cir. 2013) (unpublished), but that case does not help her.  In *Thomas,* the ALJ did not discuss the claimant's use of a cane at all. In this case, the ALJ did not ignore Ms. Collins's statement that she needs a cane.  He evaluated that statement against the medical evidence and against the fact Ms. Collins had not used a cane at her consultative physical evaluation.

12

occupational therapist." *Id.* *Parker* does not at all purport to undermine the Social Security Administration's directive in SSR 96-9p that the inclusion in an RFC of a claimant's need for a cane or other hand-held assistive device requires a finding of the necessity for the cane based on medical documentation of that need and the circumstances under which it is needed.

The lack of a cane in the RFC is not legally erroneous.  There is substantial evidentiary support for its omission.

## V.   Ms. Collins's Other Attacks on the RFC

Ms. Collins's final argument is that the RFC lacks substantial support as a whole because the ALJ did not sufficiently explore the extent to which the sedentary job base was eroded due to her various limitations, including a need for a cane, certain visual restrictions, and a need to alternate sitting and standing.  The court finds no error requiring remand.  First, the court has already addressed, and rejected, her contention the ALJ was required to include a cane in the RFC.  Second, the ALJ appropriately explained to the vocational expert the nature of the visual limitations he wanted the VE to account for when opining about available jobs.  The ALJ asked the VE to consider a person who could not perform jobs that require binocular vision.  The VE sought clarification on that point and asked whether the restriction was meant to capture an absence of depth perception but the retention of near acuity.  The ALJ agreed that was the appropriate evaluation.  The transcript reads:

> VE:    I just want to clarify [your hypothetical]. . . . I'm going to just make sure that I understand that I have to avoid positions that involve

depth perception, but the person's ability for near acuity remains intact?

ALJ:  Right.

(R. 73).

Third, the ALJ also adequately explained to the VE the nature of Ms. Collins's sit/stand option.  It is not true, as Ms. Collins argues, that a claimant who is limited to unskilled work with a sit/stand option *must* be found disabled.  Ms. Collins cites a case from the Western District of Missouri for this proposition, *Johnson v. Barnhart,* 2006 WL 373896 (W.D. Mo. Feb. 16, 2006).  The rationale of the *Johnson* case is at odds with the contents of the Social Security Ruling on which it relies (SSR 83-12) and it has been rejected by the Seventh Circuit.  *See Powers v. Apfel,* 207 F.3d 431 (7th Cir. 2000).  Social Security Ruling 83-12 notes that unskilled jobs *ordinarily* do not allow for a sit/stand option. But that does not mean unskilled jobs do not exist which permit a sit/stand option.  Where there is expert vocational testimony about the existence of specific unskilled jobs that are compatible with a sit/stand option described by an ALJ, the ALJ may reasonably rely on that testimony to find that jobs consistent with a claimant's vocational profile and RFC exist in sufficient numbers within the national economy.  *See Powers,* 207 F.3d at 436-37 (ALJ permitted to rely on expert testimony about unskilled jobs that have a sit/stand option).

In summary, the court rejects the arguments advanced by Ms. Collins regarding the ALJ's RFC determination.  Because the VE opined there were jobs available in significant numbers in the relevant economy within the confines of the

14

ALJ's RFC, the court finds that substantial evidence supports the Commissioner's decision that Ms. Collins was not disabled.

### **Conclusion**

For the foregoing reasons, the Commissioner's decision that Ms. Collins was not disabled is AFFIRMED.

So ORDERED.


Dated:  September 30, 2015

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record by email through the court's ECF system

15